IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>v.<br><br>CANDELARIO SOTO-DELGADO,<br><br>                     Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 2:15-cr-00713-RJS<br><br>Judge Robert J. Shelby |

Defendant Candelario Soto-Delgado, has filed a Motion for *Franks* Hearing.[1]  In his Motion, Mr. Soto-Delgado requests an evidentiary hearing concerning the veracity of the affidavit underlying the warrant issued for his telephone location data.  He argues that the affiant knowingly or recklessly omitted important information from the affidavit submitted to establish probable cause supporting the warrant, and therefore evidence resulting from the execution of this warrant should be suppressed.  Because Mr. Soto-Delgado has not made the substantial preliminary showing required to obtain a *Franks* hearing, the court denies his Motion.

## BACKGROUND

Mr. Soto-Delgado argues that certain information was omitted from the affidavit in support of the warrant for his phone GPS information—the ping warrant.  He contends that if this information was included in the affidavit the issuing court would not have had probable

---

[1] Dkt. 22.

cause to issue the warrant.  Mr. Soto-Delgato seeks to suppress all evidence obtained as a result of the ping warrant.

To show that material was omitted from the affidavit, Mr. Soto-Delgato relies on subsequent affidavits submitted in support of warrants for his and Martin Estrada-Ruelas's residences—the residence warrants.  Below, the court first discusses the affidavit in support of the ping warrant and then discusses the affidavits in support of the residence warrants.

## I. Ping Warrant

On August 18, 2015, Detective Kresdon Bennett of the Unified Police executed an affidavit submitted in support of the ping warrant.  In the affidavit, Detective Bennett stated that the subject telephone number was "used by an unknown Hispanic male, hereinafter referred to as 'UM'," and that the telephone "constitute[d] instrumentality of a crime, namely violations of transportation and distribution of controlled substances . . . ."[2]  He also stated that he "and detectives with the Unified Police Department/UCMCTF Agents [were] investigating a drug trafficking organization DTO," and that the "investigation [had begun] within the last 45 days." He further stated that "[d]uring the investigation [he had] learned a group was selling large quantities of heroin, cocaine, and methamphetamine in Salt Lake County."[3] And at one point, Detective Bennett stated, based on information from a confidential informant (CI), the UM "is the main leader of the DTO."[4]

The affidavit describes information gathered by a CI during two controlled purchases.[5] Detective Bennett stated that during the first controlled purchase he "was present when the call

---

[2] Dkt. 22-2 at 4, ¶ 4.
[3] *Id.* at 4, ¶ 7.
[4] *Id.* ("Your affiant was contacted by a male herein after referred to as CI#1 regarding a male named 'UM' that was selling large quantities of methamphetamine, heroin, and cocaine and is the main leader of the DTO.").
[5] *Id.*

was made to the Subject Telephone Number and discussions of amounts and prices of cocaine, heroin, and methamphetamine were discussed."[6]  He also stated that the "CI made arrangements to meet UM at a predetermined location" and that the CI purchased "approximately 30 grams (one ounce)" of cocaine.[7]

Detective Bennett stated that during the second controlled purchase he had the "CI contact the UM and order an ounce of heroin."[8]  Detective Bennett stated that he "was present during these conversations to the Subject Telephone about quantities and costs of illegal narcotics."[9]  During this purchase, the CI bought more than an ounce of heroin.[10]  Detective Bennett stated that "[b]ased upon the investigation of the UM, he carries the Subject Telephone Number with him when he engages in drug trafficking.  Therefore, the GPS coordinates will provide the probable locations where evidence, contraband, fruits, and instrumentalities of the UM's drug trafficking activities can be found, such as 'stash' houses used to store and package illegal drugs, and meeting locations used by the UM and his associates.  Currently, UPDTSC Detectives have no known residence located for the UM."[11]  Based on this affidavit, the reviewing state district court judge found probable cause and issued the ping warrant.

## II. Residence Warrants

Fifteen days after Detective Bennett submitted his affidavit in support of the ping warrant, on September 2, 2015, Detective Russell Billings of Provo executed two affidavits— one in support of a search warrant for 6534 West 3500 South, West Valley, and a second in

---

[5] *Id.* at 4, ¶ 7.
[6] *Id.* at 4–5, ¶ 8.
[7] *Id.*
[8] *Id.* at 5, ¶ 9.
[9] *Id.*
[10] *Id.*
[11] *Id.* at 6, ¶ 15.

support of a search warrant for 6508 West 3500 South, West Valley.[12]  The factual allegations in the two affidavits are nearly identical and they both describe the two controlled buys referenced in the ping affidavit.

In discussing the first controlled buy, Detective Billings stated that the "CI made contact with the person later identified as Martin Estrada-Ruelas," and that he "heard the phone conversation discussing prices and quantities of controlled substances."[13]  In the affidavit for 6508 West, he stated that these phone conversations discussing prices and quantities were with Candelario Soto-Delgado.[14]  Detective Billings stated that the "CI was followed and observed arriving at the 6534 W 3500 South address" and that the CI purchased over one ounce of cocaine at this address.[15]  He stated that the CI had said that Candelario Soto-Delgado delivered the cocaine.[16]  Detective Billings also stated that "[d]uring the first controlled buy the CI had a conversation with both suspects in this case.  The structure of their organization was discussed wherein Martin Estrada-Ruelas identified himself as the boss of the organization and he would have Candelario Soto-Delgado deliver to the CI.  CI was instructed to contact Candelario in the future to make arrangements for the purchase of controlled substances."[17]

When discussing the second controlled buy, Detective Billings stated that he again "heard the phone conversation discussing prices and quantities of controlled substances."[18]  In the affidavit for 6508 West, he added that the "CI contacted Candelario Delgado-Soto on the second

---

[12] Dkt. 22-4; Dkt. 22-5.
[13] Dkt. 22-4 at 3.
[14] Dkt. 22-5 at 4 (stating that Detective Billings "heard phone conversations with Candelario Delgado-Soto discussing prices and quantities of controlled substances").
[15] *Id.*
[16] *Id.* at 5.
[17] Dkt. 22-5 at 5.
[18] Dkt. 22-4 at 4.

controlled buy to arrange the sale."[19]  He also stated that the "CI was followed and observed arriving at the 6534 West 3500 South address," the same address as the first controlled buy.[20] This time, however, Detective Billings "observed a male later identified as Candelario Delgado-Soto walk from the address 6508 W 3500 South to 6534 West 3500 South in the driveway and make a hand to hand exchange with CI.  Candelario then returned to his residence at 6508 West 3500 South and walk [sic] inside."[21]  In the 6508 West affidavit, Detective Billings described the 6508 West 3500 South residence as Mr. Soto-Delgado's residence.[22]  During the second controlled buy, the CI obtained one ounce of heroin.[23]  Detective Billings also filed an incident report on August 18, 2015, the same day that Detective Bennett executed the ping affidavit, regarding the second controlled buy.[24]  In this report, he stated that "[t]he suspect has been identified as Martin Estrada Ruelas."[25]  He also stated that "the suspect had an unidentified runner meet the CI at his vehicle to deliver the Heroin and take the money."[26]

## ANALYSIS

In *Franks v. Delaware*, the Supreme Court made clear that while there is a "presumption of validity with respect to the affidavit supporting the search warrant," a defendant may challenge the underlying search warrant in certain circumstances.[27]  The Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the

---

[19] Dkt. 22-5 at 6.
[20] *Id.* at 5.
[21] Dkt. 22-4 at *5*.
[22] Dkt. 22-5 at 5.
[23] *Id.* at 4.
[24] Dkt. 22-6.
[25] *Id.* at 4.
[26] *Id.*
[27] 438 U.S. 154, 171 (1978).

Fourth Amendment requires that a hearing be held at the defendant's request."[28]  If the defendant is entitled to a hearing, he must prove these allegations at that hearing by a preponderance of the evidence in order to void the search warrant.[29]  The "standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods."[30]

Here, Mr. Soto-Delgado requests a *Franks* hearing arguing that Detective Bennett's affidavit omitted material information.[31] To obtain that a hearing, Mr. Soto-Delgado has the burden of making a substantial showing: (1) that Detective Bennett made a material omission in his affidavit and that this omission was made either knowingly or intentionally, or with reckless disregard for the truth; and (2) that the ping warrant would have lacked probable cause if the omitted material had been included in the underlying affidavit.  In his Motion, Mr. Soto-Delgado alleges the following: (1) that while Detective Bennett stated in his affidavit that the owner of the target phone was an unidentified male, he knew that Candelario Soto-Delgado in fact owned the phone; (2) that while Detective Bennett stated that the owner of the target phone was the boss of the drug trafficking organization, he knew that the owner of the phone was only a low-level runner; and generally (3) that Detective Bennett had substantially more information about the drug trafficking organization than that set forth in the affidavit.

The court concludes that the ping affidavit would have provided probable cause for the warrant even if these if these alleged omissions were included, and any falsehoods corrected.[32]

---

[28] *Id.* at  155–56 (1978).

[29] *Id.* at 156.

[30] *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (quoting *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997)).

[31] Dkt. 22 at 7–8.

[32] *United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015) ("If . . . the affidavit contains intentional, knowing, or reckless omissions, a court must add in the omitted facts and assess the affidavit in that light . . . .

Probable cause exists to issue a warrant if "the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place."[33]  Mr. Soto-Delgado asserts that "it is doubtful any Judge would have determined that there was probable cause to issue a warrant" had the affidavit contained his asserted version of the facts referenced above.[34]

The court disagrees.  If the court includes the facts Mr. Soto-Delgado alleges Detective Bennett omitted in the affidavit, probable cause still exists to issue the warrant.  Mr. Soto-Delgado still used the subject telephone number on two occasions to arrange for the CI to purchase controlled substances.[35]  Also, under Mr. Soto-Delgado's asserted facts, he still met with the CI during the two controlled buys and provided him with an ounce of cocaine and an ounce of heroin, respectively.[36]  Certainly a prudent person would believe that there was a fair probability that evidence of a crime could be obtained from the phone location information of a drug runner; and that this information could assist authorities in finding "the probable locations where evidence, contraband, fruits, and instrumentalities of . . . drug-trafficking activities can be found, such as 'stash' houses used to store and package illegal drugs, and meeting locations" used by Mr. Soto-Delgado and others involved in the drug trafficking organization, which was the asserted purpose of the ping warrant.[37]

Because a ping affidavit containing Mr. Soto-Delgado's alleged facts would still have supplied probable cause for the ping warrant, the court denies Mr. Soto-Delgado's Motion and

---

[W]hether we are talking about acts or omissions the judge's job is much the same—we must ask whether a warrant would have issued in a but-for world where the attesting officer faithfully represented the facts.").

[33] *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).

[34] Dkt. 22 at 8.

[35] *See* Dkt. 23 at 10.

[36] *Id.*

[37] Dkt. 22-2 at 6.

does not decide whether Detective Bennett made any knowing, intentional, or reckless omissions.

## CONCLUSION

Because the affidavit provides probable cause for the warrant even when all of the claimed omissions are included, Mr. Soto-Delgado has failed to meet his burden on the second prong of the *Franks* analysis.  Namely, he has failed to make a substantial showing that, but for the claimed omissions, the warrant could not lawfully have been issued.  Mr. Soto-Delgado's Motion for *Franks* Hearing is DENIED.  (Dkt. 22.)

**SO ORDERED** this 1st day of June, 2016.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge